**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEW JERSEY BUILDING LABORERS' STATEWIDE BENEFIT FUNDS AND THE TRUSTEES THEREOF, <br><br> *Plaintiffs*, <br><br> v. <br><br> DEMZA MASONRY LLC, <br><br> *Defendant*. | Civil Action No.: 18-cv-9607 (PGS)(LHG) <br><br> **MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court on a motion for summary judgment filed by Plaintiffs New Jersey Building Laborers' Statewide Pension Fund and the Trustees Thereof (the "Pension Fund") and the New Jersey Building Laborers' Statewide Benefit Funds and Trustees Thereof (the "Funds") (together, "Plaintiffs") (ECF No. 23) and on a cross-motion for summary judgment filed by Defendant Demza Masonry LLC ("Demza") (ECF No. 31). In this action, Plaintiffs seek to hold Demza liable for defunct J. Speranza Brickwork, Inc. d/b/a Speranza Brickwork, Inc.'s ("Speranza Inc.") delinquent contributions to a multiemployer benefit plan and withdrawal liability pursuant to ERISA. Specifically, Plaintiffs assert that the doctrines of alter ego liability, successor liability, and controlled group liability render Demza jointly and severally liable for Speranza Inc.'s ERISA liabilities.

## BACKGROUND

Speranza Inc. was a New Jersey-based construction contractor bound to a Collective Bargaining Agreement ("CBA") with the New Jersey Building Construction Laborers' District

Council and its Local Unions (the "Union").[1] (Plaintiffs' Statement of Material Facts Not in Dispute ("Plaintiffs' SMFND") ¶ 8, ECF No. 23-3). Under the terms of the CBA, Speranza Inc. was obligated to hire members of the Union to perform certain bargaining unit work covered by the CBA. (*Id.* ¶ 8).

Under the terms of the CBA, Speranza Inc. was obligated to pay CBA-scale wages and remit fringe benefit contributions to Plaintiffs for work performed by its employees. (*Id.* ¶ 10). Speranza Inc. paid fringe benefit contributions to Plaintiffs until about 2014. (*Id.* ¶ 11). On or about August 27, 2014, the United States District Court of the District of New Jersey entered judgment in *New Jersey Building Laborers Statewide Benefit Funds and the Trustees Thereof v. Speranza Brickwork, Inc.*, No.13-cv-7272, in favor of the Funds and against Speranza Inc. for delinquent contributions for the period of January 1, 2007 through December 31, 2010, in the amount of $4,901,819.05. (*Id.* ¶ 12). On or about May 12, 2015, Speranza Inc. filed for Chapter 7 bankruptcy protection in the United State Bankruptcy Court for the District of New Jersey, in a matter captioned *In Re: J. Speranza Brickwork, Inc.*, No. 15-cv-18907. (*Id.* ¶ 13). Speranza Inc. was discharged from bankruptcy on or about December 5, 2017. (*Id.* ¶ 14). Thereafter, Speranza Inc. ceased making contributions to the Pension Fund and therefore permanently effected a "complete withdrawal" from the Pension Fund, within the meaning of ERISA § 4203, 29 U.S.C. § 1383. (*Id.* ¶ 15). The Pension Fund calculated Speranza Inc.'s withdrawal liability as $7,778,286.00. (*Id.* ¶ 16).

On or about November 8, 2017, the Pension Fund prepared a payment schedule for Speranza Inc.'s withdrawal liability, as well as a demand for payment in accordance with the payment schedule, and forwarded same to Speranza Inc. and Demza. (*Id.* ¶ 17). After the first

---

[1] All facts presented in this section are undisputed, unless otherwise noted.

quarterly installment was not received, on or about March 22, 2018, the Pension Fund advised

Speranza Inc. and Demza of their failure to remit said quarterly installment and that Speranza

Inc. and Demza were in default of their obligation. (*Id.* ¶ 18). On or about March 22, 2018, the

Pension Fund notified Speranza Inc. and Demza that if they did not cure the default within sixty

(60) days of receipt of the written notification, Plaintiffs would require the immediate payment

of the outstanding liability from the due date of the first payment which was not timely made.

(*Id.*). Speranza Inc. and Demza failed to cure the default, and, as a result, Plaintiffs brought two

separate actions, now consolidated before the Court, seeking the outstanding withdrawal liability,

as well as unpaid fringe benefit contributions, liquidated damages, interest, and attorneys' fees.[2]

(*Id.* ¶¶ 19, 21).

By way of background, Joe Speranza was the president and sole owner of Speranza Inc.,

a masonry subcontractor. (*Id.* ¶ 30). Speranza Inc. operated out of 15 High Street, White House

Station, New Jersey 08889 (the "Whitehouse Station Location"), which was then owned by Mr.

Speranza's mother and sister. (*Id.*). Speranza Inc. ceased operations in late 2012 or early 2013

because the company "was no longer making money." (*Id.* ¶¶ 13, 24, 30; Deposition of Joe

Speranza ("Speranza Dep.") at 54:1-3, Certification of Seth Ptasiewicz, Esq. in Support of

Motion for Summary Judgment ("Ptasiewicz Cert.," Ex. L, ECF No. 23-2)). A labor union

dispute in 2010 also contributed to Speranza Inc.'s financial woes. (Affidavit of Joseph

Speranza ¶ 8, Ptasiewicz Cert, Ex. I).

---

[2] The Pension Fund commenced this action seeking withdrawal liability. The Funds brought a separate action with captioned *New Jersey Buildings Laborers' Statewide Benefit Funds and the Trustees Thereof v. Demza Masonry LLC d/b/a Demza Masonry Construction*, No. 18-cv-9893 seeking to hold Demza jointly and severally liable for Speranza Inc.'s delinquent contributions. (Plaintiffs' SMFND ¶ 27). These cases are now consolidated before the Court. (ECF No. 10).

After being unemployed for several months, Mr. Speranza was advised by a contact in the construction industry of an employment opportunity with a new masonry company. (*Id.* ¶¶ 13, 14). After successfully following up on that lead, in or around January 2016, Mr. Speranza began working with Tim O'Brien and Willie Dempsey at the new masonry company, which was ultimately named Dempsey, O'Brien, Speranza ("DOS"). (Speranza Dep. at 43:8-14). Despite the name, Mr. Speranza was not offered an ownership interest in DOS. (*Id.* at 43:17-19). He was employed by DOS as an office manager and estimator. (*Id.* at 43:24-44:1). DOS, however, completed only one project before the relationship between Mr. O'Brien and Mr. Dempsey soured and the company ceased operations in 2016. (*Id.* at 44:2-18).

In or around July 2016, Mr. Dempsey formed Demza and subsequently hired Mr. Speranza as an "estimator/office manager/vice president." (Plaintiffs' SMFND ¶¶ 38, 46, 50). Demza was originally located in Maspeth, New York, but later relocated to the Whitehouse Station Location, where Speranza Inc. formerly operated. (*Id.* ¶ 47). By the time Demza began operating, however, Mr. Speranza's siblings no longer owned the Whitehouse Station Location as the property was in receivership. (Deposition of Willie Dempsey ("Dempsey Dep.") at 17:15-19-9, Ptasiewicz Cert, Ex. K). Thus, Demza did not rent its operations space from Mr. Speranza's family.

Mr. Dempsey never offered Mr. Speranza an ownership interest in Demza. (Plaintiffs' SMFND ¶ 39). Rather, Mr. Dempsey has been the sole owner and president of Demza since the company's inception in July 2016. (*Id.* ¶ 50).

Mr. Speranza is currently employed by Demza. In Mr. Speranza's role as an "estimator/office manager/vice president for Demza," he handles the bidding of projects, payroll, and signs checks. (*Id.* ¶ 39). In essence, Mr. Speranza manages Demza's office functions, while

Mr. Dempsey is responsible for Demza's operations in the field. (Speranza Dep. at 14:18-20). Demza has employed several other former Speranza, Inc. employees throughout the years, in addition to Mr. Speranza. (Plaintiffs' SMFND ¶¶ 71-75).

Demza has never worked on any of the same projects as Speranza Inc. or DOS. (Speranza Dep. at 54:11-19). However, the record provided is unclear as to whether Speranza Inc. and Demza shared the same body of customers.

There are other facts that are not fully explained including, among other things: (1) how Speranza Inc.'s overall management compares to Demza's (*e.g.*, putting aside Mr. Speranza's purported management functions in both companies); (2) how Speranza Inc.'s operations compare to Demza's (*e.g.*, putting aside the fact that they both operate (or operated) as masonry contractors); and (3) how Speranza Inc.'s supervision compares to Demza's, particularly in view of the fact that Plaintiffs seem to allege that Mr. Speranza only had one direct report at Demza, Tony Triola (Plaintiffs' SMFND ¶ 62). Additionally, there are no proofs submitted that Mr. Speranza received extraordinary salary or bonuses which may indicate who is the actual owner of the business.

In support of its cross-motion, Demza submits that the National Labor Relations Board ("NLRB") has previously investigated whether it was an alter ego of Speranza, Inc. and found that it was not. In that case, Local 4, Bricklayers and Allied Craftworkers' Administrative District Council of New Jersey (the "trade union") filed a charge with the NLRB against Speranza Inc. and Demza alleging that the companies failed and refused to provide the trade union with "necessary and relevant information." (Demza's Moving Br., Ex A at 1, ECF No. 31-3). By letter dated September 27, 2018, the NLRB dismissed the charge finding that there was insufficient evidence adduced to support the trade union's theory that an alter ego relationship

exists between Speranza Inc and Demza. (*Id.*). In particular, the NLRB's Regional Office concluded:

> Although Demza also commenced its operations at Speranza's former location in 2017, the investigation did not reveal that Joe Speranza, [Speranza Inc.'s] former sole owner, has had an ownership interest in Demza. Moreover, although Joe Speranza is employed as Demza's Vice President and Estimator, there is no evidence that he has any control over Demza. Additionally, the investigation failed to reveal sufficient evidence that the two entities share common equipment, management/supervision or customers. To that end, Speranza's equipment was liquidated during its 2015 Bankruptcy proceedings and no evidence was revealed that Demza purchased any of Speranza's equipment. With respect to common management and supervision, the investigation revealed that out of 11 Speranza superintendents/foreman, only 3 are employed by Demza in the same or similar capacity. Additionally, out of approximately 13 Speranza's customers, Demza has done business with only one. Finally, there is no evidence that Demza was created to evade its responsibilities under the [National Labor Relations] Act. Given these circumstances, the lack of common ownership, control, equipment, and insufficient evidence of common management, supervision and common customers precludes a finding that an alter ego relationship exists between Speranza and Demza.

(*Id.* at 2). On November 20, 2018, the NLRB's General Counsel affirmed its Regional Office's decision on appeal. (Demza Moving Br., Ex. B).

## LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage

in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor . . . that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x 222, 227 (3d Cir. 2007).

## ANALYSIS

The dispute is whether Demza can be held liable for defunct construction company Speranza Inc.'s delinquent contributions to a multiemployer employment benefit plan and withdrawal liability. Plaintiffs argue that because "Demza is a disguised continuance of

[Speranza Inc.]," Demza remains liable for Speranza Inc.'s ERISA liabilities under several theories.[3] (*See* Plaintiffs' Moving Br. at 32-34, ECF No. 23-4).

ERISA is designed "to ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 720 (1984)). In the construction industry, "a significant number of [multiemployer] plans were experiencing extreme financial hardship" as a result of individual employers' withdrawal from the plans, which saddled the remaining employers with increased funding obligations. *Id.* at 721. These withdrawals caused a domino effect of cascading additional withdrawals that eventually "could have resulted in the termination of numerous plans." *Id.* Accordingly, Congress enacted the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1381, *et al.* This statute "imposed a withdrawal charge on all employers withdrawing from an underfunded plan." *Milwaukee Brewery Workers' Pension Plan v. Jos. Schlitz Brewing Co.*, 513 U.S. 414, 416 (1995). "The MPPAA specifically holds an employer that effects a 'complete' or 'partial' withdrawal liable to the pension plan for its share of the plan's unfunded vested benefits allocable to the withdrawn employer." *New Jersey Carpenters Pension Fund v. Hous. Auth. & Urban Dev. Agency of the City of Atl. City*, 68 F. Supp. 3d 545, 553–54 (D.N.J. 2014). "The imposition of such liability aims, in essence, to lessen the harm borne by the pension fund as a result 'of the loss of the withdrawn employer's

---

[3] Plaintiffs frame this dispute as primarily a withdrawal liability case, with its withdrawal liability arguments purportedly "applying with equal force to [Plaintiffs] position that Demza is liable for [Speranza Inc.'s] unpaid fringe benefit contributions." (*Id.* at 22 n.3, 25 n.5). As such, the Court will analyze the merits of Plaintiffs' arguments as they relate to withdrawal liability.

future contributions.'" *Id.* at 554 (quoting *O'Connor v. DeBolt Transfer, Inc.*, 737 F. Supp. 1430, 1435 (W.D. Pa. 1990)).

Withdrawal liability extends only to "employers." ERISA § 515; 29 U.S.C. § 1145. In defining who is an "employer," courts have imposed liability upon entities that are the alter ego, successor, or member of a controlled group, requiring them to pay the withdrawal liability of the employer who was responsible for remitting contributions to the pension fund. *See generally Bd. of Trustees of Chicago Plastering Inst. Pension Tr. Fund v. William A. Duguid Co.*, 761 F. Supp. 1345 (N.D. Ill. 1991); *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). Plaintiffs contend that Demza remains liable for Speranza Inc.'s ERISA liabilities pursuant to all of these theories of liability, which are discussed in turn below.

### i. ALTER EGO LIABILITY

The alter ego doctrine is meant to prevent employers from evading their obligations under labor laws and collective bargaining agreements through the device of making "a mere technical change in the structure or identity of the employing entity . . . without any substantial change in its ownership or management." *NLRB v. Hosp. San Rafael, Inc.*, 42 F.3d 45, 51 (1st Cir.1994) (citation omitted).

In applying the alter ego doctrine, courts analyze whether the companies have "substantially identical management, business purpose, operation, equipment, customers, and supervision, as well as ownership." *Stardyne, Inc. v. NLRB*, 41 F.3d 141, 146 (3d Cir. 1994) (citation and quotation marks omitted). A plaintiff need not establish all of these factors to prove alter ego status. *Id.* "[A]n intent to evade [ERISA] is [also] an important, but not an essential, factor." *Id.* at 151; *see also Mass. Carpenters Cent. Collection Agency v. Belmont Concrete*

*Corp.*, 139 F.3d 304, 307-09 (1st Cir. 1998). This test is applied with a degree of flexibility, in light of the general federal policy of piercing the corporate veil when necessary, to protect employee benefits. *See Ret. Plan of UNITE HERE Nat. 7 Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010).

Here, it is undisputed that Speranza Inc. and Demza were both masonry subcontractors and therefore plausibly maintained the same business purpose. As stated above, a shared business purpose weighs in favor of finding the existence of an alter ego relationship. It is also undisputed, however, that Speranza Inc. and Demza did *not* have the same ownership—Mr. Speranza owned Speranza Inc. and Mr. Dempsey owned Demza—and that Demza did *not* use Speranza Inc.'s equipment, which was liquidated as part of Speranza Inc.'s bankruptcy. These factors weigh against finding the existence of an alter ego relationship.

The remaining factors—which are whether Speranza Inc. and Demza shared substantially identical management, operation, customers, and supervision—largely remain question of material fact that preclude summary judgment. For example, the record does not set forth facts establishing that there is no genuine dispute as to: (1) whether Mr. Speranza maintained control over Demza in his capacity as a non-owner Vice President of Demza; (2) whether Speranza Inc.'s former body of customers overlaps with Demza's current body of customers; (3) whether both companies operated similarly, *inter alia.*

Demza's cross-motion for summary judgment fares no better. Demza places great weight on the NLRB's determination in an unrelated proceeding that Demza was not an alter ego of Speranza Inc. As Demza concedes, however, that finding is not binding upon this Court. (Demza Moving Br. at 3, ECF No. 31-2); *Spielmann v. Anchor Motor Freight, Inc.*, 551 F. Supp. 817, 821 (S.D.N.Y. 1982). It also does not supplant Demza's obligation to set forth material

facts demonstrating that no genuine issues remain for trial, which it failed to do. In fact, rather than properly submitting its own statement of material facts not in dispute, Demza merely submitted a response to Plaintiffs' statement of material facts not in dispute admitting each fact set forth by Plaintiffs therein. (*See* Statement of Material Facts Not in Dispute and In Response to Plaintiffs' Statement of Material Facts, ECF No. 31-1); *see also* L.Civ.R. 56.1(a) ("A motion for summary judgment unaccompanied by a statement of material facts not in dispute shall be dismissed.").

In sum, as reflected above, the alter ego analysis is inherently "heavily fact-laden." *Duguid Co.*, 761 F. Supp. at 1348.; *see also Stardyne*, 41 F.3d at 146 (quoting *Southport Petroleum Co. v. N.L.R.B.*, 315 U.S. 100, 106 (1942) (noting that the alter ego analysis involves questions of fact)). Accordingly, the Court cannot award summary judgment for either party, as some facts have not been sufficiently adduced or are in contention.

### ii.     SUCCESSOR LIABILITY

Plaintiffs next argue that the doctrine of successorship liability doctrine applies to this case. "The successorship [liability] doctrine provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities." *Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). The successorship liability doctrine is invoked where the transfer of the assets undermines federal labor interests, such as failure to pay employee benefits to a union pension fund. *See Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1328 (7th Cir. 1990). Generally, the doctrine may be applied where, under the totality of the circumstances, "there is a 'substantial continuity' between the enterprises." *Id.* at 329; *Hawaii Carpenters Trust Funds v. Waiola Carpenter Shop, Inc.*, 823 F.2d 289, 293 (9th Cir.

11

1987) (quoting *Fall River Dyeing and Finishing Corp. v. NLRB*, 482 U.S. 27, 43, 107 S.Ct. 2225,

96 L.Ed.2d 22 (1987)). Fairness is a prime consideration in the doctrine's application. *Sullivan*

*v. Dollar Tree Stores, Inc.*, 623 F.3d 770, 782 (9th Cir. 2010). In determining fairness, courts

consider a number of factors:

> (a) whether there has been a substantial continuity of the same business;
> (b) whether the same employer uses the same plant;
> (c) whether the same work force is used;
> (d) whether the same jobs exist under the same working conditions;
> (e) whether the same machinery, and/or equipment is used;
> (f) whether the same supervisors are employed;
> (g) whether the same methods of production are used;
> (h) whether the same product is produced;
> (i) whether the body of customers is the same.

*NLRB v. Jeffries Lithograph*, 752 F.2d 459, 463 (9th Cir. 1985) (quoting *Premium Foods Inc.*,

260 N.L.R.B. 708, 714 (1982)). The "'same body of customers' factor is of special significance

when determining successorship for purposes of withdrawal liability under the MPPAA

construction industry exception." *Resilient Floor Covering Pension Tr. Fund Bd. of Trustees v.*

*Michael's Floor Covering, Inc.*, 801 F.3d 1079, 1095 (9th Cir. 2015).

In reviewing all of these factors, the Court finds that factual issues preclude a dispositive

application of the successorship liability doctrine at this stage of the litigation. Most importantly,

neither party has set forth facts clearly indicating whether Speranza Inc. and Demza share the

same body of customers, which is "a factor is of special significance when determining

successorship for purposes of withdrawal liability under the MPPAA construction industry

exception." *See Resilient*, 801 F.3d at 1095. Moreover, many of the same, or very similar,

factors that were not clearly established with respect to the alter ego analysis also preclude

summary judgment in this context (*see supra* at 9-10). In short, Plaintiffs' motion for summary

judgment and Demza's cross-motion for summary judgment are denied with respect to this theory of liability.

### iii. CONTROLLED GROUP LIABILITY

Finally, the Pension Funds contend that Demza is liable under the controlled group theory. The MPAA extends liability to "trades or businesses (whether or not incorporated) which are under common control" of an employer. 29 U.S.C. § 1301(b)(1); *New Jersey Carpenters Pension Fund*, 68 F. Supp. 3d at 553-54. While the statute itself does not define specifically "under common control," it directs that regulations implementing this provision "shall be consistent and coextensive with regulations prescribed for similar purposes by the Secretary of the Treasury under section 414(c)" of the Internal Revenue Code. *New Jersey Carpenters Pension Fund*, 68 F. Supp. 3d at 558; *United Food & Commercial Workers Union v. Progressive Supermarkets*, 644 F.Supp. 633, 637 (D.N.J. 1986) (quoting 29 U.S.C. § 1301(b)(1)).

In order to extend withdrawal liability to other entities, a plaintiff must show that the entity is (1) a trade or business; and (2) under common control with the withdrawing employer. *Gov't Dev. Bank for P.R. v. Holt Marine Terminal, Inc.*, 765 F.Supp.2d 710, 714-15 (E.D. Pa. 2011). To prove factor one, courts have relied on the tax law (IRS) definition of trade or business. *Comm'r v. Groetzinger*, 480 U.S. 23, 35 (1987). In *Groetzinger*, Justice Blackmun explained that to be engaged in a trade or business one "must be involved in an activity with continuity and regularity and that the taxpayer's primary purpose for engaging in the activity must be for income or profit." *Id.* In reviewing the "trade or businesses" component, courts have added an additional inquiry. That is, "whether characterizing an entity as a 'trade or

business' will fulfill the underlying purpose of the MPPAA: to prevent employers from avoiding withdrawal liability by fractionalizing their operations." *Gov't Dev. Bank*, 765 F.Supp.2d at 715.

Second, under the operative definition of "common control," companies are essentially held to be under common control where they are linked by either a parent corporation or "where five or fewer persons own at least 80% of the voting stock or share value of each corporation, and the same persons own more than 50% of the voting stock or share value, taking into account each person's interest only to the degree of identical stock ownership in each corporation." *Doherty v. Teamsters Pension Trust Fund*, 16 F.3d 1386, 1390 n.3 (3d Cir. 1994) (citing 26 U.S.C. § 1563(a)(2)); *New Jersey Bldg. Laborers' Statewide Pension Fund & Trustees Thereof v. CID Constr. Servs., LLC*, No. 15CV3412SRCCLW, 2015 WL 5965627, at *5 (D.N.J. Oct. 14, 2015). When enacting the common control theory, Congress sought to prevent businesses from "shirking their ERISA obligations by fractionalizing operations into many separate entities." *See Brown v. Astro Holdings*, 385 F.Supp.2d 519, 533 (E.D. Pa. 2005) (citation omitted).

In applying this test, it cannot be disputed that Speranza Inc. and Demza qualify as "trade[s] or businesses," as defined by the IRS. Both companies engaged in "regular and continual involvement in [masonry contracting], primarily for the purpose of income or profit." *New Jersey Carpenters Pension Fund*, 68 F. Supp. 3d at 559. The undisputed facts demonstrate, however, that Speranza Inc. and Demza are not under "common control," as the term is defined by the IRS. Demza and Speranza Inc. are not linked by a parent corporation, nor is there any overlapping ownership interests (Plaintiffs' SMFND ¶ 39). *See Doherty*, 16 F.3d at 1390 n.3.

The inquiry, however, does not cease there. As Judge Simandle acknowledged in *New Jersey Carpenters Pension Fund*, courts should not be "inflexible" in applying these precepts and should undertake a factual inquiry to determine whether an employer is striving to

14

circumvent withdrawal liability by "fractionalizing their operations." *Id.* (quoting *Gov't Dev. Bank,* 765 F.Supp.2d at 715). In other words, the Court is not constrained by the IRS definitions set forth above and should otherwise seek to determine whether the record before it evidences an attempt to undermine the underlying purpose of the MPPAA: "to prevent employers from avoiding withdrawal liability." *Id.* (citation omitted); *see also Brown,* 385 F.Supp.2d at 533. In the Court's view, the totality of the facts presented in the evidentiary records before it raises at least some issues of fact as to whether Speranza Inc. sought to evade withdrawal liability. Since this fact-laden inquiry is better suited for determination at trial, the Court will deny both motions for summary judgment and allow this matter to proceed to trial.

## CONCLUSION

Based on the foregoing, Plaintiffs' motion for summary judgment (ECF No. 23) and Demza's cross-motion for summary judgment (ECF No. 34) are denied in their entirety. All of the legal issues discussed herein shall proceed to trial.

<u>**ORDER**</u>

This matter comes before the Court on a motion for summary judgment filed by Plaintiffs New Jersey Building Laborers' Statewide Pension Fund and the Trustees Thereof (the "Pension Fund") and the New Jersey Building Laborers' Statewide Benefit Funds and Trustees Thereof (the "Funds") (together, "Plaintiffs") (ECF No. 23) and on a cross-motion for summary judgment filed by Defendant Demza Masonry LLC ("Demza") (ECF No. 31). Having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented; and for good cause shown; and for all of the foregoing reasons;

IT IS on this 3 day of Dec , 2019;

**ORDERED** that Plaintiffs' motion for summary judgment (ECF No. 23) is **DENIED**; and it is further

**ORDERED** that Defendant's cross-motion for summary judgment (ECF No. 31) is **DENIED**; and it is further

**ORDERED** that the parties are directed to meet and confer concerning trial dates and thereafter submit to the Court by letter proposed trial dates.

_____
PETER G. SHERIDAN, U.S.D.J.